# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

DENISE C.,

                                         Plaintiff,

       v.                                      3:23-CV-052
(ATB)

KILOLO KIJAKAZI,

                                         Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
FERGUS J. KAISER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, partially denying her applications for benefits.  This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.  (Dkt. No. 5).  Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.  PROCEDURAL HISTORY

On April 13, 2017, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning August 18, 2015.  (Administrative Transcript ("T") 11, 141-42, 143).  On April 14, 2017, plaintiff protectively filed an application for

Supplemental Security Income ("SSI"), alleging disability beginning the same date.  (T. 11, 143-50).  Plaintiff's applications were denied on May 25, 2017.  (T. 67, 68, 89-96).  On May 8, 2019, Administrative Law Judge ("ALJ") Melissa Hammock conducted a hearing during which plaintiff and vocational expert ("VE") Courtney Stiles testified.  (T. 38-66).  On July 11, 2019, the ALJ issued an order denying plaintiff's claim.  (T. 13-27).  This decision became final when the Appeals Council denied plaintiff's request for review on July 6, 2020.  (T. 1-3).

Plaintiff appealed the agency decision, and on July 29, 2021, pursuant to a stipulation between the parties, the district court remanded this matter for further administrative proceedings.  (T. 590-93).  Plaintiff appeared at a second hearing before ALJ Hammock on September 6, 2022, at which testimony was also taken from VE Mark Tasso.  (T. 561-81).  On November 2, 2022, ALJ Hammock issued a decision finding that plaintiff was disabled from August 18, 2015, through March 1, 2020, but that plaintiff's disability ended on March 2, 2020, at which time there were jobs that existed in significant numbers in the economy that plaintiff could perform.  (T. 531-55).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Standards for Termination of Benefits

"A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability." *Milliken v. Saul*,

3

No. 19-CV-09371, 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) (citing *Smith v. Berryhill*, No. 17-CV-05639, 2018 WL 5619977, at *12 (S.D.N.Y. Aug. 10, 2018), *report and recommendation adopted*, 2018 WL 4565144 (S.D.N.Y. Sept. 24, 2018)). "Where a claimant is found to be disabled, the Commissioner may find that he or she is no longer disabled from a later date where substantial evidence of 'medical improvement' supports the conclusion that the claimant has become able to work." *Id.* (citing *Ritchie v. Saul*, No. 19-CV-01378, 2020 WL 5819552, at *11 (S.D.N.Y. Sept. 29, 2020)).

Where an ALJ determines that a claimant has experienced a medical improvement and, therefore, is no longer disabled from a certain date, the ALJ must apply an eight-step sequential analysis for DIB claims and a seven-step analysis for SSI claims.[1] *See* 20 C.F.R. § 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii). Similar to the five-step process outlined above, the eight-step medical improvement standard for DIB claims first asks the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). The medical improvement standard for SSI claims does not include a determination of whether the claimant is engaged in substantial gainful activity. If the claimant has not engaged in substantial gainful activity, the second step (first step for SSI claims) requires the ALJ to consider whether

---

[1] Although it has been noted that this termination analysis is employed "most commonly" at subsequent continuing review proceedings, it has also been held that this standard is appropriate at the determination of initial applications, such as this case, which result in the award of benefits for "closed periods." *See Hicks v. Comm'r of Soc. Sec.*, No. 3:14-CV-72, 2015 WL 58385, at *2 n. 4 (N.D.N.Y. Jan. 5, 2015) (citing cases approving the termination analysis in initial application cases where the ALJ finds a closed period of disability).

the claimant has an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, then the claimant's disability will be found to continue. 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). If the claimant does not suffer from such an impairment, the ALJ proceeds to the third step (second step for SSI claims), which requires the ALJ to determine whether there has been a medical improvement. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

If there has been a medical improvement, the ALJ proceeds to the fourth step (third step for SSI claims) and must determine whether the medical improvement is related to the claimant's RFC, based on the impairment that was present at the time of the most recent favorable medical determination. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii).  If the ALJ finds that the medical improvement was related to the claimant's RFC, the ALJ skips step five (fourth step for SSI claims) and proceeds to step six (step five for SSI claims).[2] *Id.* At step six (fifth step for SSI claims), the ALJ considers whether all impairments in combination are severe – i.e., whether they significantly limit the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). If the impairments are found to be severe, then the ALJ proceeds to the seventh step (sixth step for SSI claims) and must determine whether the claimant is able to perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7); 416.994(b)(5)(vi). If the claimant can perform his or her past relevant

---

[2]Step five (step four for SSI claims), which looks at whether any specified exception applies, only comes into play if the ALJ finds that there was no medical improvement, or the medical improvement was unrelated to the claimant's ability to work. *See* 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

work, he or she is found to be no longer disabled. *Id.* If the claimant cannot perform his or her past relevant work, then the ALJ proceeds to the eighth step (seventh step of SSI claims) to determine whether the claimant can perform any other work. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If the claimant can perform other work, then the ALJ will find that the disability has ended. *Id.*

"Paramount to the medical improvement standard is the presumption that when the agency finds a claimant disabled, that disability will continue." *Milliken*, 2021 WL 1030606, at *11. "Furthermore, unlike cases involving the five-step sequential analysis, the burden is with the agency to prove that the claimant no longer is disabled." *Id.*; *see* 20 C.F.R. §§ 404. 1594(b)(5) ("[i]n most instances, *we must show* that you are able to engage in [SGA] before your benefits are stopped." (emphasis added)).

## C.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from

6

both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  **FACTS**

When plaintiff appeared at the first administrative hearing on May 8, 2019, she was 40 years old and lived in a house with her husband, who supported her financially. (T. 42-43). Plaintiff had a driver's license. (T. 43-44).

Plaintiff worked in retail as a cashier and supervisor until August 2015, at which time she stopped working because of a "mental breakdown." (T. 50). Although she subsequently sought part-time employment, plaintiff testified that at least one other former employer determined that she was "non-rehirable" due to her "issues . . . with . . . mental stability." (T. 50). Plaintiff testified that she had been diagnosed with bipolar disorder, anxiety, depression, and post-traumatic stress disorder. (T. 53). She suffered

from flashbacks between two and three times a week, as well as nightmares.  (T. 55).
She experienced anxiety attacks when she went to a crowded store, as well as by herself
at home.  (T. 56-57).  They occurred "quite often, probably four or five times a week[.]"
(T. 58).  Plaintiff had experienced "severe side effects" from medication she was
previously prescribed, including suicidal thoughts, weight gain, and tremors.  (T. 58-
59).  Although plaintiff might have a really good day where she could get up and do
things, she described feeling depression for several days after, during which time she
would lay on the couch with a blanket over her head "all day."  (T. 59).

In addition to her "emotional issues," plaintiff also experienced "stomach issues"
including IBS and colitis.  (T. 51).  As a result, she experienced diarrhea "all the time."
(T. 52).  Plaintiff testified that in a "work situation," she required use of the bathroom
"four or five times a shift," in addition to her normal work breaks.  (T. 52-53).  She
would have to "immediately go to the bathroom," or else "change [her] clothes."  (T.
53).  She testified that the bathroom had to be "about [ten] feet from where she was
working."  (T. 53).

When plaintiff testified at the second administrative hearing pursuant to the
Appeals Council's remand order, she maintained the same living arrangement with her
husband.  (T. 567).  She had an adult child who did not live with her.  (T. 574).
Plaintiff testified that she continued to suffer from the same ailments, but that her
digestive issues has become worse.  (T. 568). She stated that she "easily" found herself
rushing to the bathroom "between 10 and 15" times a day, for periods of "between 10 . .
. and 45 minutes."  (T. 569).  She experienced pain in her "entire stomach area,"
sweating and shaking during these bouts.  (T. 570).  She also experienced daily

symptoms of her depression and anxiety, including a lack of motivation and anxiety making it difficult to go to the store.  (*Id.*).  Plaintiff testified that the medication prescribed by her psychiatrist "doesn't really help."  (*Id.*).  She noted that in December of 2019, several months after testifying at the first administrative hearing, she was hospitalized for attempting suicide.  (T. 575-76).

## IV.  <u>THE ALJ'S DECISION</u>

On November 2, 2022, the ALJ determined that plaintiff was "under a disability, as defined by the Social Security Act, from August 18, 2015, through March 1, 2020. (T. 549).  However, the ALJ also found that plaintiff's disability "ended March 2, 2020, and [plaintiff] has not become disabled again since that date."  (T. 555).

At step one of the five-step analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 18, 2015, the date the plaintiff became disabled.  (T. 535).  At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, attention deficit hyperactivity disorder (ADHD), borderline personality disorder, major depressive disorder (MDD), posttraumatic stress disorder (PTSD), adjustment disorder, and irritable bowel syndrome with diarrhea.  (T. 535).  At step three, the ALJ determined that none of these impairments met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  (T. 536).  At step four, the ALJ found that plaintiff

> Had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could never climb ladders, ropes or scaffolds and she could have no exposure to unprotected heights.  The claimant could perform simple, routine tasks, but not at a production rate pace.  She could make simple work-related decisions and adapt to occasional changes in the work routine.  The claimant could

have occasional interaction with supervisors and coworkers, but she could have no interaction with the public. Her combined severe impairments would have resulted in being off task 10 percent of the workday.

(T. 538). At step five, the ALJ ascertained that based on plaintiff's age, education, work experience and RFC, from August 18, 2015, through March 1, 2020, there were "no jobs that existed in significant numbers in the national economy that the claimant could have performed." (T. 548). Accordingly, the ALJ determined that plaintiff was "under a disability, as defined by the Social Security Act, from August 18, 2015, through March 1, 2020." (T. 549).

The ALJ then went through the eight-step sequential evaluation process to determine whether plaintiff's disability was ongoing, and assess whether medical improvement had occurred. After determining that plaintiff had not developed any new impairments since March 2, 2020, the ALJ found that plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (T. 549).

Next, the ALJ concluded that medical improvement had occurred as of March 2, 2020. (T. 551). Specifically, the ALJ noted that after plaintiff was discharged from her January 2020 inpatient psychiatric treatment, she engaged in therapy and medication management through a psychiatrist. As of March 2020, plaintiff "appeared euthymic with overall normal mental functioning during examinations – findings that became consistent and continued throughout the remainder of the available medical records, until her bipolar disorder was noted to be in full remission and the [plaintiff] consistently denied symptoms of depression, mania, and other psychological

10

symptoms." (T. 551). The ALJ explained that the medical improvement "that has occurred is related to the ability to work because there has been an increase in the [plaintiff's] residual functional capacity." (T. 551). Specifically, the ALJ concluded that

> beginning March 2, 2020, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders, ropes or scaffolds and she can have no exposure to unprotected heights. The plaintiff can perform simple, routine tasks, but not at a production rate pace. She can make simple work-related decisions and adapt to occasional changes in the work routine. The claimant can have occasional interaction with supervisors and coworkers, but she can have no interaction with the public.

(T. 551).

Based on this RFC, the ALJ concluded that plaintiff has not been able to perform past relevant work since March 2, 2020. (T. 554). However, the ALJ concluded that beginning on March 2, 2020, based on the VE's testimony and considering the plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff could perform. (T. 554). Accordingly, the ALJ found that plaintiff's disability ended March 2, 2020, and that she had not become disabled again since that date. (T. 555).

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her contention that the ALJ's decision was not supported by substantial evidence:

1.     The ALJ erred in finding that plaintiff experienced medical improvement related to her ability to work as of March 2, 2020. (Plaintiff's Brief ("Pl.'s Br.") at 13-23) (Dkt. No. 7).

2.      The ALJ failed to include any limitations associated with plaintiff's irritable bowel syndrome in the RFC.  (Pl.'s Br. at 23-24).

3.      The ALJ improperly assessed plaintiff's limitations for social interactions.  (Pl.'s Br. at 24-25).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 7-18) (Dkt. No. 12).  For the reasons stated below, this court agrees with the plaintiff and reverses the Commissioner's decision.  Given the length of time that has passed from when plaintiff first filed for benefits, and the lack of record evidence supporting the Commissioner's determination that plaintiff's disability terminated as of March 2, 2020, vacating the Commissioner's decision and remanding for a calculation of benefits is the appropriate remedy.

**DISCUSSION**

**VI.   MEDICAL IMPROVEMENT/RFC/EVALUATION OF MEDICAL EVIDENCE**

    **A.   Legal Standards**

        **1.   Medical Improvement**

Medical improvement is specifically defined in the regulations.

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

12

20 C.F.R. § 404.1594(b)(1). As stated above, medical improvement is only one part of the termination analysis.  First, the Commissioner finds that there is medical improvement, and then, based upon whether that improvement is related to the plaintiff's ability to perform work, the analysis continues. Ultimately, the Commissioner will determine whether, notwithstanding the medical improvement, the plaintiff is still disabled.

## 2.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

13

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 3.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

14

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the

15

record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.   Analysis

As stated above, the ALJ found that plaintiff was disabled until March 1, 2020, but that starting on March 2, 2020, plaintiff's disability ceased.  Although plaintiff agrees that she was disabled as of August 18, 2015, she argues that the ALJ's determination that plaintiff experienced medical improvement on March 2, 2020 was impermissibly arbitrary.  (Pl.'s Br. at 13).  Defendant, in response, contends that the March 2, 2020 medical improvement date was not arbitrary, but was "logically tethered to the fact that, following her successful inpatient treatment in January 2020 and subsequent participation in group therapy, plaintiff began to show significant improvement in her mental symptoms by the beginning of March 2020."  (Def.'s Br. at 8).

To this end, the ALJ specifically discussed her reliance on the medical record evidence in determining the date on which she concluded there was medical improvement, noting that as of March 2020, plaintiff

> appeared euthymic with overall normal mental functioning during examinations – findings that became consistent and continued throughout the remainder of the available medical records, until her bipolar disorder was noted to be in full remission and the [plaintiff] consistently denied symptoms of depression, mania, and other psychological symptoms.

(T. 551).  Although the ALJ did not rely on a specific medical opinion to determine the date of medical improvement, this court and others have interpreted the applicable

16

regulations to allow a finding of medical improvement to be based on a plaintiff's symptoms as reflected in treatment records.  *See Michael M. v. Comm'r of Soc. Sec*., No. 5:17-CV-1038 (ATB), 2019 WL 530801, at *9 n. 12 (N.D.N.Y. Feb. 11, 2019) (citing *Kennedy v. Colvin*, No. 14-CV-6397, 2015 WL 5510818 at *10) (the applicable regulations provide that medical improvement determinations may be made upon improvement of a claimant's symptoms as reflected in treatment records); *see also Newbold v. Colvin*, 718 F.3d 1257, 1263-64 (10th Cir. 2013) ("medical improvement may be found based on improvement in symptoms alone") ).[3]

Plaintiff also argues, however, that the ALJ's initial RFC analysis was not supported by substantial evidence, and ultimately tainted the ALJ's evaluation of

---

[3]     *But see Kennedy v. Berryhill*, No. 1:16-CV-00855, 2018 WL 5619838, at *4 (W.D.N.Y. Oct. 29, 2018) (Finding ALJ's reliance on his own lay reading of plaintiff's treatment notes "to find medical improvement, in the absence of any supporting medical opinion, was erroneous," and that it is "well-established that an ALJ may not base a medical improvement finding on his own "lay interpretation" of the medical evidence, 'uncorroborated by a physician's opinion or assessment.'" (citation omitted)); *Andrew S. v. Saul*, No. 5:19-CV-0570 (LEK), 2020 WL 6709833, at *5 (N.D.N.Y. Nov. 16, 2020) (in reciting the procedural history of the case, noting that the Appeals Council issued a remand order finding that the ALJ's "conclusion that the claimant reached medical improvement on December 20, 2011 is not supported by substantial evidence, because . . . there is no clear psychological opinion, report, or other type of evidence showing the claimant's medical condition improved as of December 20, 2011," and indicating that the Appeals Council remanded with instructions to "reassess whether mental improvement occurred on December 20, 2011 and obtain evidence from a mental medical expert to assist in this evaluation." (internal quotations omitted)).

It bears noting that some courts in this district appear to refer to the entirety of the disability termination analysis as "medical improvement," as opposed to addressing medical improvement as one of the distinct inquiries within the disability termination analysis, *i.e.*, whether plaintiff has exhibited a decrease in the medical severity of his or her impairment which was present at the time of the most recent favorable medical decision.  The conflation of these two standards presents an issue, however, because even if medical improvement determinations may be made based upon improvement of a claimant's symptoms as reflected in the treatment records, this same general rule is not necessarily applicable to subsequent determinations in the disability termination analysis, such as the plaintiff's post-medical-improvement RFC.

whether plaintiff's medical improvement impacted her ability to perform substantial gainful employment and plaintiff's post-medical-improvement RFC.  In particular, plaintiff contends that the ALJ erred in assessing the medical evidence during the initial disability analysis to the extent she relied on state agency medical consultant Dr. Harding's opinion to find that plaintiff did not require any "absenteeism limitations," despite the opinions of three treating providers that plaintiff would be absent from work two or more days per month, and the marked limitations opined by a consultative examiner that arguably supported the treating providers' restrictive opinions in this regard.  (T. 543-44).  Defendant denies that the ALJ improperly assessed the opinion evidence concerning plaintiff's absenteeism, and further argues that plaintiff's argument is "moot," because "more restrictive limitations in the [initial] RFC would have produced the same result, *i.e.*, a finding plaintiff was disabled from August 18, 2015, through March 1, 2020."  (Def.'s Br. at 12).

The court agrees that the ALJ's stated reasons for rejecting the restrictive opinions of the treating and examining medical sources of record for absenteeism (and, to some extent, time off task), and adopting the implied conclusion of Dr. Harding that no limitations for absenteeism were required, were flawed.  The ALJ found that the absences endorsed by plaintiff's providers "lack support in the frequency of treatment the claimant sought and received during the period between August 18, 2015, and March 1, 2020."  (T. 544).  The ALJ went on to state that "even if [she] were to add all the days the [plaintiff] spent in inpatient care after the alleged onset date, that number would not even exceed one day of absence every other month when averaged over the more-than-four-year period in question."  (T. 544). This assessment entirely misses the

mark.  Although certainly a factor bearing consideration, plaintiff's ability to attend work on a regular basis, without work-preclusive absences, should not have been measured by the frequency of her inpatient mental health treatment alone.  Indeed, plaintiff's treating providers opined that plaintiff's marked limitations for absenteeism were based on the combination of plaintiff's mental impairments together with any side of effects of her medication, (T. 395, 398, 525), and consultative examiner Dr. Slowik assessed marked limitations for the ability to sustain an ordinary routine (T. 387).  The ALJ should have taken into consideration more than what she perceived to be plaintiff's "relative infrequency of treatment" in determining the persuasiveness of these opinions. (T. 544).

The ALJ mentioned, briefly, that the "medical evidence in terms of the intensity and nature of the objective findings . . . provides insufficient support" for work-preclusive absenteeism.  However, the court struggles, without more, to reconcile this conclusion with the ALJ's observation elsewhere in the opinion that "the medical evidence from August 2015 through February 2020 . . . reflects multiple psychiatric hospitalizations including one suicide attempt, repeated manic episodes with impulsivity, and baseline signs of depression and anxiety during most examinations," along with the "strong" suggestion that plaintiff had "significant problems responding appropriately to change or stress *and* staying on task in the workplace."  (T. 543).  It is unclear how the plaintiff's "baseline signs of depression and anxiety" during most examinations were considered by the ALJ.  In any event, the Second Circuit has rejected an ALJ's heavy reliance on largely normal, discrete mental status examination findings as substantial evidence for finding a medical opinion to be less persuasive.  *See*

*Loucks v. Kijakazi,* No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) ("These examinations, however, analyze the patient's mental state only at the time of the examination and do not consider symptoms the patient may experience outside of that brief period of time.")  (citing *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health")).  For these reasons, the court agrees that the ALJ failed to support her evaluation of the opinion evidence prior to March 2, 2020, particularly with respect to absenteeism, with substantial evidence.

Even if the ALJ's error in evaluating the medical evidence from the period prior to March 2, 2020 was moot and did not warrant remand, as the Commissioner suggests, plaintiff was ultimately found disabled based on the limitations set forth in the ALJ's initial RFC analysis.  Thus, the subsequent termination of plaintiff's benefits was only proper if the ALJ could point to substantial evidence establishing that a medical improvement restored plaintiff's ability to work, s*ee Tracy G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-198, 2023 WL 2601946, at *2 (W.D.N.Y. Mar. 22, 2023), and if the post-medical-improvement RFC rendered by the ALJ was supported by substantial evidence.

In determining whether plaintiff's medical improvement restored plaintiff's ability to work, the ALJ merely stated that plaintiff's medical improvement was related to her ability to work "because there has been an increase in the [plaintiff's] residual functional capacity." (T. 551).  The ALJ then found that, beginning on March 2, 2020, plaintiff's combined severe impairments no longer resulted in her being off task ten percent of the workday. (T. 551).  Otherwise, there is no difference between the pre- and post-disability RFCs. (*Compare* T. 538 *with* T. 551).  This limitation directly

20

impacted whether the plaintiff remained disabled, as the vocational expert testified that being off task more than five percent of the workday would preclude work. (T. 578).

In support of her post-medical-improvement RFC assessment, and the omission of her prior finding that plaintiff would be off task ten percent of the workday, the ALJ stated that

> because of [plaintiff's] documented significant improvements in managing her symptoms and adapting to situational stressors, I find there is insufficient evidence that the [plaintiff] would be off task in the workplace. The objective record establishes that her bipolar disorder is in long term remission while the examination findings of her concentration, memory, and mood are all normal. Essentially, the signs and symptoms upon which I based the prior off-task finding have resolved.

(T. 552). The ALJ further rejected plaintiff's argument that plaintiff's IBS symptoms should be considered in the determination of time off task, because plaintiff "was only seen by her gastroenterologist one time between March 2, 2020 and the date of this decision." (T. 552).

The only medical opinions of record regarding the period after March 1, 2020 are that of plaintiff's primary care provider, Dr. Eder, and plaintiff's therapist, licensed clinical social worker ("LCSW") Cathy Fredella – both of whom opined that plaintiff remained disabled, and that her mental functional limitations continued to be work preclusive. In July 2022, Dr. Eder submitted a questionnaire in which he opined that plaintiff's conditions and limitations were "about the same" as those he had described in the March 20, 2019 questionnaire he had previously prepared. (T. 397-98, 708). At that time, Dr. Eder opined, among other extreme limitations, that the combination of plaintiff's mental impairments together with any side effects of medication would cause

21

her to be off task more than 20 percent of the workday, and absent from work three or more days per month.  (T. 397).

Likewise, in August 2022 LCSW Fredella opined that plaintiff's condition and limitations had worsened and become more severe since March 2019, and provided a two-page summary of her conclusions as an addendum to the opinion.  (T. 1157-59). Notably, in March 2019 LCSW Fredella had opined that plaintiff's conditions and limitations would cause her to be off task more than 15 percent but less than 20 percent of the workday, and absent from work three or more days per month.  (T. 393-395).

The ALJ found these most recent opinions of Dr. Eder and LCSW Fredella unpersuasive, indicating that both suffered from "significant consistency and supportability" issues. (T. 553).  Even if this court were to assume that the ALJ's evaluation of these opinions was supported by substantial evidence, her treatment of them left the record devoid of any medical opinion supporting the Commissioner's conclusion that plaintiff would no longer be off task (and, perhaps, absent) to a disabling degree in the workplace after March 1, 2020. Every other medical opinion of record, including that of the original state agency medical experts, consultative examiner, and treating providers, were prepared during the period of plaintiff's disability.  It does not logically follow that these opinions constitute substantial evidence of the post-medical-improvement RFC.  Otherwise, there is no opinion of record substantiating the ALJ's conclusion that plaintiff's impairments no longer precluded her from work.  Thus, in reaching the conclusion that plaintiff no longer suffered from such limitations, the ALJ relied on her own lay judgment to evaluate the

22

medical records and determine that plaintiff's medical improvement increased her functional capacity to the extent opined.  This was error.

Admittedly, courts in this Circuit have consistently held that "an RFC is not per se invalid for lack of supporting medical opinion," *Borrero v. Saul*, No. 3:19-CV-1306, 2020 WL 7021675, at *8 (D. Conn. Nov. 30, 2020), and that "remand is not always required when" the record does not include supporting opinions, so long as it otherwise "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).[4] But here, absent any medical opinion, the plaintiff's medical records do not specifically illuminate how her impairments impact her ability to perform work-related functions, particularly how her medical improvement affected her ability to stay on task in the work setting.  *See Dereje H. v. Comm'r of Soc. Sec.,* No. 19-CV-6514, 2021 WL 722438, at *7 (W.D.N.Y. Feb. 24, 2021) ("The finding that Dereje would be off task

---

[4] There are limited circumstances in which it may be proper for an ALJ to make an RFC determination without a functional assessment from an acceptable medical source. For example, the court recognizes that "where the record reflects only minor impairments, the ALJ may, in his [or her] discretion, assess an RFC in the absence of opinion evidence." *Andriaccio v. Berryhill*, No. 18-CV-84, 2019 WL 1198357, at *7 (W.D.N.Y. Mar. 14, 2019); *see also Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (holding that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment . . . .") (internal quotations and citation omitted). In addition, where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 8-9 (2d Cir. 2017) (internal quotation marks and internal citation omitted); *see also Pellam v. Astrue*, 508 Fed. App'x 87, 90 (2d Cir. 2013) (finding ALJ's RFC was supported by substantial evidence where ALJ had all of the claimant's treating physician's treatment notes and consulting examining physician's opinion, which largely supported ALJ's assessment of RFC). Thus, if there is either extensive evidence demonstrating a plaintiff's functional capacity, or if the evidence demonstrates that the resulting functional impairment is very limited, it may be proper for an ALJ to draw his or her own functional assessment.

only 10% of the time therefore was necessary for the ALJ to conclude that Dereje was no longer disabled as of February 24, 2017. But how the ALJ concluded Dereje would be no more than 10% off task after February 24, 2017, is anyone's guess.");[5] *Quineila B. v. Kijakazi*, No. 3:21-CV-768, 2022 WL 2604593, at *5 (D. Conn. July 8, 2022) (finding error where the RFC for the period of medical improvement was not supported by any "medical opinion or other adequate evidence," and explaining why the medical records on which the ALJ relied, which consisted of the results of physical evaluations and diagnostic imaging, "do not address the specific ability to perform work-related functions, and do not assess the non-exertional limitations at issue of being off task and absent"); *see also Gillespie v. Saul,* No. 19-CV-6268, 2020 WL 5628068, at *3 (W.D.N.Y. Sept. 21, 2020).

Moreover, considering that the Commissioner bore the burden of establishing that plaintiff's disability had terminated, the court cannot conclude that the ALJ satisfied such duty based only on her interpretation of plaintiff's raw medical data and various mental status examinations. Indeed, "the leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their nature 'highly complex and individualized.' " *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) (quoting *Nasci v. Colvin*, No. 15-CV-947, 2017 WL 902135, at *9 (N.D.N.Y. Mar. 7, 2017)); *see also Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) (holding that an ALJ's ability to

---

[5] In *Dereje H.*, the ALJ relied on the VE's testimony that an employer's tolerance for being off task was up to ten percent of the workday. *Dereje H.*, 2021 WL 722438, at *7. Here, the ALJ relied on the VE's testimony that an employer's tolerance for being off task was up to five percent of the workday. (T. 578).

24

make common sense judgments does not extend to assessment of mental limitations); *Tavion T. v. Comm'r of Soc. Sec.*, No. 20-CV-00514, 2021 WL 1559243, at *4 (W.D.N.Y. Apr. 21, 2021) ("Unlike exertional limitations, an ALJ cannot make 'common sense' judgments about mental health impairments."). Here, considering the ALJ's finding that plaintiff suffered from numerous, severe mental impairments, it was improper for the ALJ to assess specific and individualized mental functional capacities in the RFC, in the absence of any contemporary expert opinion supporting the same.

## VIII.  <u>NATURE OF REMAND</u>

Neither party has suggested what category of remand would be appropriate if the court were to conclude, as I do, that the ALJ's decision was not supported by substantial evidence.  For the following reasons, the court finds that vacating the Commissioner's final decision and remanding for a calculation of benefits is the appropriate remedy.

At the outset, in exercising discretion under § 405(g) (sentence four), a court properly considers "the procedural posture of a case, and particularly which party bears the burden of proof and production on issues of disability." *Andrew S. v. Saul*, 5:19-CV-0570, 2020 WL 6709833 at *7 (N.D.N.Y. Nov. 16, 2020) (quoting *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 392 (M.D. Pa. 2019)). Thus, as a general matter, remanding solely for calculation of benefits is more likely to be appropriate in medical improvement cases because the plaintiff's disability has already been established and is presumed to continue.  In these cases, persuasive proof of disability is a matter of record, and if "the Commissioner has already clearly failed to develop evidence of decreased medical severity as of the alleged date of medical improvement," or, as further relevant to this case, evidence supporting the post-medical-improvement RFC, "remand for the

25

calculation of benefits . . . could be warranted even if the claimant points to no positive evidence of disability after the alleged medical improvement date." *Andrew S.*, 2020 WL 6709833 at *7.

Here, it is undisputed that no medical opinion evidence supports the ALJ's conclusion that plaintiff's disability ceased, as of March 2, 2020, to the extent that she became capable of performing substantial gainful activity.  To the contrary, the record contains several opinions from plaintiff's treating providers confirming that she still suffered from the same, if not more severe, limitations for full-time unskilled work. Moreover, the evidence relied on by the ALJ in support of her determination that plaintiff's disability terminated as of March 20, 2020, is unpersuasive.  Specifically, that plaintiff, after many years of disability, finally achieved some ability to manage her mental health symptoms at particular times during the course of medical and therapeutic treatment, while not working, does not, without more, establish that she could do the same while engaged in full-time, unskilled employment.[6]

Additionally, in determining whether a remand for calculation of benefits is appropriate, courts also "look to the age and procedural history of a case." *Milliken*, WL 1030606, at *9. For instance, in *Milliken*, the district court found that the age of that case weighed in favor of remanding for a calculation of benefits, because the claimant

---

[6] The court also seriously questions the ALJ's assessment of the opinion evidence of record during plaintiff's disability as it pertains to time off-task and absenteeism, and whether a proper evaluation of said evidence would have compelled additional limitations to the initial RFC assessment, further heightening the ALJ's burden in establishing that plaintiff's disability had terminated.  Because remand is warranted for other reasons, this court only notes that any future endeavors by the Commissioner to establish the termination of plaintiff's disability in this case should include medical opinion evidence specifically assessing plaintiff's limitations as to time off-task and absenteeism, with support from substantial evidence within the record.

filed for benefits six years prior, and participated in two rounds of administrative hearings "after a confession of error." *Id.* Here, the facts are similar in that plaintiff filed for benefits six years ago, her claim was initially denied in May 2017, and again upon first consideration by the ALJ in July 2019, but upon appeal was remanded for conceded error and the ALJ issued a partially favorable decision in November 2022, after a second administrative hearing. *See Filocomo v. Chater*, 944. F. Supp. 165, 171 (E.D.N.Y. Nov. 7, 1996) (concluding that remanding for calculation of benefits was appropriate because "[s]everal years have passed since plaintiff first applied for disability benefits").

In sum, remanding for further administrative proceedings does not seem appropriate given the length of time that has passed from when plaintiff first filed for benefits, and the lack of record evidence supporting the Commissioner's determination that plaintiff's disability terminated as of March 2, 2020.  It appears that the Commissioner has had multiple opportunities to obtain a medical expert with respect to assessing plaintiff's medical improvement and post-medical-improvement RFC, and remanding now to  "enable the ALJ to fish for evidence justifying the denial of benefits" is simply not appropriate. *Andrew S.*, 2020 WL 6709833 at *7.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 7, 13) be **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**; and it is further

27

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g) for calculation and payment of benefits.

Dated:  September 18, 2023

Andrew T. Baxter
U.S. Magistrate Judge